T.C. Memo. 2018-13

UNITED STATES TAX COURT

DAVID MURESAN SCIENTIFIC RESEARCH FOUNDATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11943-14X.                    Filed February 5, 2018.

David Muresan (an officer), for petitioner.

<u>Mark A. Weiner</u>, for respondent.

MEMORANDUM OPINION

ASHFORD, <u>Judge</u>:  The Internal Revenue Service (IRS or respondent)

determined that petitioner is not exempt from Federal income tax under section

501(a) because it is not an organization described in section 501(c)(3).[1]  Petitioner

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** challenged that determination by timely filing a petition for declaratory judgment with the Court pursuant to section 7428(a). The parties filed with the Court the entire administrative record and submitted this case for decision without trial in accordance with Rule 217(b)(1) and (2). See also Rule 122. For purposes of this proceeding, the facts and representations contained in the administrative record are accepted as true, see Rule 217(b)(1), and are incorporated herein by this reference. Petitioner bears the burden of proving that the IRS' determination is incorrect. See Rule 142(a); Calhoun Acad. v. Commissioner, 94 T.C. 284, 295 (1990).

## Background

At the time the petition was filed, petitioner's principal place of business was in Washington.

I. David Muresan and Petitioner

Petitioner is a nonprofit corporation organized in the State of Washington on July 18, 2011. Petitioner was incorporated by David Muresan and at all relevant times he was petitioner's sole officer and director.

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]   Mr. Muresan emigrated to the United States from Romania in 1988.  He claims to be a self-employed long-term caregiver and home builder, as well as a commercial truck driver.  In the past, he has worked as an electrician and a computer technician in Seattle, Washington; as a custodian in a California high school; and while in Romania, as a self-employed electronics repairman, a high school teacher, a design engineer, and a mechanic in a steam locomotive factory.

Mr. Muresan also holds himself out as a prolific inventor who has obtained patents in Romania for two of his inventions in electric motors and patents in the United States for four of his inventions in computer electronics, lighting, computer hardware, and digital pictures.  He claims he has another eight ideas to be patented.  For example, in this regard, he has developed various theories regarding the role of body temperature in human health and physiology.  He believes that human cells are at greater risk when their temperature decreases and that dissipation of body heat is a key cause of many illnesses, and therefore he has developed a way of insulating the human body so that the body's immune system will cure diseases.  However, he has been unsuccessful in convincing medical professionals of his views and marketing his ideas and inventions to established companies.  Consequently, he incorporated petitioner as, in part, a vehicle for promoting and marketing his ideas and inventions.

[*4]   Petitioner's bylaws[2] provide in pertinent part:

**ARTICLE II Non-Profit Operation**
2.1 The purpose for which the DMMD Foundation is formed is exclusively for scientific research and other similar nonprofit purposes, as contemplated by Section 501(c)(3) of the Internal Revenue Code of 1986

**ARTICLE III Purposes and Mission**
3.1 **Purpose**. The DMMD Foundation is dedicated to:  invent, develop prototypes, software development, and scholarship grants.

3.2 **Mission**. The mission of David Muresan Scientific- Research Foundation (DMMD Foundation) is:.

**Foundation's Mission.**

**Part A) Technology Side. (about 20%)**
**1) Patent new ideas.**  This includes David Muresan's ideas and other people ideas. Specific, David Muresan will instruct prospective inventor how to apply for a patent.

**2) Build prototypes of existing inventions.**  David Muresan will use the corporation facility and his technology skill to transform ideas in products. ***David will build his car engine without pollution*** which recently was rejected by German company Volkswagen and Ford Company.  ***David will build his new idea about a bicycle*** and more. Once the prototypes will work we will not use anymore foundation money.

---

[2]There are two versions of petitioner's bylaws in the administrative record. One, apparently earlier, version submitted to the IRS incorrectly identifies, inter alia, petitioner as Sakai Foundation with offices in Ann Arbor, Michigan and states that membership meetings shall be held to coincide with Sakai conferences and that the bylaws are subject to interpretation under Michigan law.  The other, apparently later, version does not include any references to Sakai.

**[*5]** **3) Expose his achievements to public.** That will include a museum in his foundation facility where David Muresan will be presented his and other inventions and prototypes built so far.

**Part B) Software Side. (about 10%)**
**1) Develop Software**. This includes the new software ideas to meet the new exigencies in digital pictures. The base will be David Muresan invention about Digital pictures smoothing.

**Part C) Human Health Side. (about 70%)**
**1) Explanation of Human Health Problems.** This will use David Muresan ideas about Human Health to find the mechanism of illnesses and to have a scientific explanation.

**2) New Approach for Cure of Illnesses.** This will use the conclusions of the above analysis to propose a practical solution to cure illnesses. The observation made by David Muresan so far is enough to proof his ideas beyond a reasonable doubt.

**3) Specific Application of health ideas**. These new ideas will be used in different health problems such as: Autism, Cancer, MS, Brain Development, Infertility, Impotence, Depression, Pains, Aging, and so on.

**4) Grants for Research** of this new idea to cure illnesses based on the immune system enhancement. Foundation will give grants to student in health, nurses and doctors to collect information from science books and observations to enrich and expand the scientific idea to let the immune system to fight infection. The results may change deep the actual practice of bypassing the immune system by medication only.

**ARTICLE IV Qualification and Application for Membership**
4.1 **Membership in DMMD**. Any academic and research organizations and commercial organizations and institutions with programs and missions consistent with the purposes of dmmd as set forth in Articles II and III and may include colleges and universities,

[*6]  research and development centers, membership organizations, and other nonprofit organizations, provided that applications for membership must show that the organization:  has goals and purposes consistent with the goals and purposes of the dmmd Foundation. **A specific contract will be made with any organization wanting to work with dmmd foundation.**
[All errors in original.]

II.  Administrative Proceedings

A.  Petitioner's Application for Exemption

On August 24, 2011, petitioner submitted to the IRS Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, which Mr. Muresan signed.  In the Form 1023 petitioner classified itself as a "private foundation", an organization engaging in "economic development", a "medical research organization operated in conjunction with a hospital", and an organization providing "scholarships, fellowships, educational loans, or other educational grants to individuals, including grants for travel, study, or other similar purposes".  Petitioner included with the Form 1023 a statement of its mission and a narrative description of its activities (collectively, petitioner's application).  The statement of petitioner's mission was nearly identical to the mission statement set forth in petitioner's bylaws, and the narrative description further explained the mission, including describing several of Mr. Muresan's

[*7] inventions and outlining the past, present and planned activities of Mr. Muresan to attempt to advance petitioner's mission.

Petitioner also responded in the affirmative to the following question in the Form 1023: "Do you or will you publish, own, or have rights in music, literature, tapes, artwork, choreography, scientific discoveries, or other **intellectual property**?" As a result of petitioner's answer to that question, petitioner was required to but did not, however, explain its answer or "[d]escribe who owns or will own any copyrights, patents, or trademarks, whether fees are or will be charged, how the fees are determined, and how any items are or will be produced, distributed, and marketed."

Despite the fact that petitioner's bylaws provide that petitioner's board of directors shall consist of no less than three but not more than five members, in the Form 1023 the only officer, director, trustee, employee or independent contractor petitioner listed was Mr. Muresan; he was listed as its "CEO" with total annual actual or estimated compensation of $36,000. Petitioner also indicated that it had adopted a conflict of interest policy but it did not, as required by the Form 1023, "provide a copy of the policy and explain how the policy has been adopted, such as by resolution of your governing board."

**[*8]** In the Form 1023 petitioner listed "[d]epreciable and depletable assets" of $400,000 and "[o]ther liabilities" of $2,500 but it did not, as required by the Form 1023, "attach an itemized list" of these assets and liabilities.

### B. The IRS' First Request for Additional Information

In a letter to petitioner dated February 10, 2012, the IRS requested additional information regarding petitioner's application. The IRS requested that petitioner do the following by March 1, 2012: (1) amend its articles of incorporation to include certain terms and submit a copy thereof as properly filed with and approved by the State of Washington; (2) submit copies of Mr. Muresan's résumé and its compensation agreement with him; (3) correct the financial data on the Form 1023, including providing an itemized list of the depreciable and depletable assets totaling $400,000; (4) submit copies of its bylaws and its conflict of interest policy; (5) submit a more detailed description of its activities, including a description of its economic development program and the research projects in which it was or would be engaged, together with copies of any publications showing reports of its research activities; and (6) describe who owned or would own or retain control of any copyrights, patents, trademarks, processes, or formulas. The IRS also questioned petitioner's classification as a private foundation and as a medical research organization operated in conjunction with a

**[*9]** hospital and recommended that petitioner modify its board of directors to place control in the hands of unrelated individuals selected from the community it would serve.

The IRS received a response from Mr. Muresan dated February 15, 2012, that attempted to address only petitioner's classification as a medical research organization. The response stated in pertinent part:

> <u>A promise in writing to a donor in consideration of making a contribution that such contribution will be spent within the prescribed time constitute a commitment.</u>
>
> I, David Muresan, the founder of David Muresan Scientific-Research Foundation promise to any donor of funds for this Foundation that the money received will be spent in the time frame the donor will require. If no such requirement will be expressed by donor the funds will be spent as necessary for the exclusive purpose set in the Foundation mission.
>
> *       *       *       *       *       *       *
>
> **Newly Created Medical Organization** - A newly created organization is required to submit to the commissioner details plans showing its proposed initial medical research program. The plan may include:
>
> > i. architectural drawing for the construction of buildings;
> > ii. facilities used for medical research; and
> > iii. plans to assembly professional staff.
>
> I. David Muresan Scientific - Research Foundation has two main parts; Technology and Human Health Care.

[*10]  None of these activities requires special buildings.  The technology aspect require a mechanical and electrical shop with proper tools. That is accommodated by a regular house with a shop, proper remodeled.

The Human Health Care requires a regular house because the whole i. idea of health, expressed in the foundation mission, consists in enhancing the human body immune system to fight diseases.

ii. The houses of this foundation are shown below.
Their addresses are:
1) 1496 S. Crestview Dr. Camano Island WA 98282
2) 1578 S. Crestview Dr. Camano Island WA 98282
3) 1473 S. Crestview Dr. Camano Island WA 98282

iii. The stuff will be selected for medical research and administration only, and will consist of a doctor, a nurse, and a caregiver.  David Muresan will be the director responsible for all the Foundation mission and after this IRS exempt approval will conduct interviews for all other positions.
    [All errors in original.]

The response included an architectural drawing of the first floor of the 1496 South Crestview Drive property and several photos apparently of the outside and parts of the inside of that property.

C.      The IRS' Second Request for Additional Information

In a letter to petitioner dated March 2, 2012, the IRS acknowledged Mr. Muresan's response dated February 15, 2012, and requested the same additional information it had requested in its February 10, 2012, letter.  The IRS requested that petitioner provide the information by March 16, 2012.

**[\*11]** The IRS received a response to its March 2, 2012, letter from petitioner dated March 11, 2012, stating in pertinent part:

> I ask you if the requested material are some <u>public documents</u>, or are <u>my own created documents</u>? If they are my created documents I ask you to provide me samples. I do not have any other documents than Non-for Profit Registration and the Charity registration.
>
> I am alone working for my Foundation and I do not have any money to consult a lawyer. I cannot ask for donations until I will have the tax exempt status.
>
> \*        \*        \*        \*        \*        \*        \*
>
> I do not have anybody working for me at this moment. What I have is just my Foundation Mission and my scientific mind.
>
> My main house 1496 is presently scheduled for sale in foreclosure and I filed with the court and on May 8th /12, I will have hearing in the Federal District Court. If you'll give me the status as exempt 501 c3, I may show to judge and to postponed the sale of my house.
>         [All errors in original.]

D.    The IRS' Third Request for Additional Information

In a letter to petitioner dated April 18, 2012, the IRS stated in pertinent part:

> Our previous letter \* \* \* [of March 2, 2012,] asked you to send us additional information about your application for tax-exempt status under section 501(c)(3) or section 521 of the Internal Revenue Code.
>
> We also contacted or attempted to contact you or your designated representative by telephone to inquire about the requested information. We are unable to make a final determination on your exempt status without the additional information; therefore, we have

[*12] placed your case in suspense.  If you intend to submit the additional information, please send it to us * * *.

\*	\*	\*	\*	\*	\*	\*

If we receive the requested information on or before * * * [July 17, 2012], we will reactivate your case.  After the above date, we will close your case, and you will be required to submit a new application package and new user fee payment to pursue tax-exempt status.

The IRS received a response to its April 18, 2012, letter from petitioner dated May 29, 2012.  Although the response included a copy of petitioner's bylaws,[3] a copy of Mr. Muresan's resume, and copies of seven of Mr. Muresan's patents, the response largely rehashed statements from petitioner's application regarding its activities and funding sources.  The response also included a one-sentence "Compensation Agreement" stating that Mr. Muresan "will be paid up to $3,000 per month after the first money raised and will be conditioned by the activity performance".  However the response stated on the one hand that Mr. Muresan would remain the only member of its board of directors until it was better funded but on the other hand that its compensated personnel would not be allowed to vote on their own compensation.  The response also stated that Mr. Muresan "had a profitable business as 'dmmd' with a different UBI number" and that Mr.

---

[3]The response also references amended articles of incorporation but the copy of the response that is in the administrative record does not actually contain the referenced amended articles.

[*13] Muresan will use that business for "any activity which does not fit into foundation non for profit activity". The response further stated that all patents presently are in Mr. Muresan's and his son's names and that if any of the "patent[s] will be marketed, that activity will be a profitable activity and will not continue as foundation activity".

E.    The IRS' Fourth Request for Additional Information

In a letter to petitioner dated June 18, 2012, the IRS again requested that petitioner provide additional information. The IRS requested that petitioner provide the following by July 9, 2012: (1) a copy of its compensation agreement with Mr. Muresan; (2) corrected financial data; and (3) an explanation as to how its research activities were carried on to benefit the public. In its letter the IRS also continued to question petitioner's classification as a medical research organization operated in conjunction with a hospital and requested that petitioner provide certain documents and information regarding that classification. Finally, in its letter the IRS advised that "[b]ased upon the available statement of facts, we conclude that you are most likely not described in section 501(c)(3) of the Code and that you are also not described in either section 509(a)(1) or Section 509(a)(2) of the Code" and set forth a number of reasons for its preliminary conclusion.

[*14] The IRS received a response to its June 18, 2012, letter from petitioner dated June 23, 2012. In this response petitioner asserted that "[a]ll the Foundation activity will be in the public interest as scientific research. **All income of the foundation will be foundation revenue** and employees, included directors, will have decent salaries." (All errors in original.) Petitioner set forth several "[s]pecific examples" of its research being in the public interest, to wit, helping prospective inventors apply for patents; proving the viability of Mr. Muresan's ideas for a pollution-free car engine, a car differential, and a bicycle seat that would eliminate the friction caused by the seat between a bicycle rider's legs; and educating people to wear warm clothes as a method of enhancing the immune system to cure diseases. The response included a one-paragraph unsigned "Agreement for Director's (CEO) Compensation" indicating that petitioner would compensate Mr. Muresan for the "positive work" he would perform for petitioner in the amount of $3,000 to $5,000 per month depending on petitioner's financial situation. The response also stated that to "**ensure that** [the] **foundation serves the public interest** [the] board of director[s] will have full control over the foundation activity EX[C]EPT SALARY AMOUNT". However, the response also reiterated that petitioner did not have any directors except for Mr. Muresan,

**[\*15]** because there was no "income to pay them"; as soon as petitioner had funds, two directors would be hired.

III.   The IRS' Preliminary Adverse Determinations and the Appeals Process

In a letter to petitioner dated January 22, 2013, the IRS notified petitioner that, on the basis of the information provided, it had concluded that petitioner did not qualify for exemption under section 501(c)(3).  In support of its conclusion, the IRS stated in pertinent part in the letter:

> Prior to your formation, B,[4] your founder and only director created several inventions, which he patented, and has several other ideas that he plans to patent.  Presently, all patents are in B's name and his son's name.  B has operated N[5] for several years, which has conducted some of the activities you plan to conduct.  In previous years, B offered his inventions to several companies but was denied each time.  Because B received numerous refusals and rejections, he decided to form you to obtain donations to develop his ideas into inventions and build prototypes of his inventions.
>
> \*        \*        \*        \*        \*        \*        \*
>
> You indicated all of your activities will be in the public interest as scientific research and will be made available to the public.  Moreover, B needs the Internal Revenue Service's help to continue his activities because exempt status will allow you to get money to promote B's ideas and inventions.  B's inventions do not get marketing attention.  If any of your patents become marketable, and

---

[4]The reference in this letter to "B" is to Mr. Muresan.

[5]The reference in this letter to "N" is to Mr. Muresan's for-profit entity, dmmd.

**[*16]** profitable, then you will stop doing this activity. You further stated that if you get interest and money, you might try to have a hospital. Two of B's properties, which are on several acres, may be divided to be used to build a hospital or he may buy existing buildings and use them as hospitals. You showed B's property on your balance sheet as your depreciable asset. B's property is in foreclosure and you wrote that tax exemption would delay the foreclosure process.

\*          \*          \*          \*          \*          \*          \*

B is your sole CEO/Board member/Director/Founder and is your only director until you have money to hire more directors. You plan to compensate B for the work he performs for you and his proposed salary will be about $5,000.00/month depending on your financial situation. B will control your financial situation to prevent excessive spending of your funds. You also said B is responsible for your mission more than anybody else. You will eventually pay employees, including directors, decent salaries.

Your reasons for requesting exemption under section 501(c)(3) of the Code include:

- B will patent any person's ideas.
- N, a related for-profit entity, will not work anymore.
- B's inventions are too advanced.
- B's health ideas and inventions are too dangerous for those making money and prevent the cause of illnesses to be found.
- B's salary from you will be reasonable and agreed upon by donors.
- B's son may continue your endeavors and act as a Director.
- B maintains he has no power to sell his ideas. He believes his ideas are too advanced and can only be developed by you with the objective being to benefit all people.

\*          \*          \*          \*          \*          \*          \*

[*17] You are not described in section 501(c)(3) of the Code because you are not exclusively operated for charitable or educational purposes.

You are not described in Section 1.501(c)(3)-1(a)(1) of the Regulations because you fail the operational test.

You do not meet the provisions of Section 1.501(c)(3)-1(c)(1) of the Regulations because more than an insubstantial part of your activities is not in furtherance of an exempt purpose. Developing B's ideas into marketable inventions serves a substantial commercial and private purpose.

As described in section 1.501(c)(3)-1(c)(2) of the Regulations, you are not operated exclusively for exempt purposes because your net earnings inure to the benefit of B. For example, you were formed by B to obtain grant money to develop and transform B's ideas into products. Moreover, you plan to build prototypes of existing inventions and exhibit B's achievements to the public--including a museum where he will present his inventions and prototypes. In addition, B plans to use your exemption to delay and/or prevent foreclosure of his properties. Finally, your board consists of one person who controls all aspects of your operations and has a for profit, business, N, who will benefit from your operations.

You are not as defined in Section 1.501(c)(3)-1(d)(1)(ii) of the Regulations because you are operating for the private interests of B and N. You are operating to confer the advantages of tax-exempt status to B as shown by the fact that your tax exemption will enable B to apply for grants to develop his inventions. Moreover, you are serving the private interests of N, because you plan to provide N marketable products that you developed.

You do not meet the provisions of Section 1.501(c)(3)-1(d)(5)(iii) of the Regulations. Any scientific research you are carrying on is not primarily conducted in the public interest. Your activities of developing marketable products serve a commercial purpose and are serving private interests.

[*18] You are like the organization in Revenue Ruling 65-1. Your activities of developing B's ideas into products are commercial and they do not constitute "scientific research" within the meaning of section 1.501(c)(3)-1(d)(5) of the regulations. In addition, your purpose of obtaining grant money to develop B's ideas is directed to benefit B and N and any public purpose is incidental.

You are comparable to the organization in Revenue Ruling 69-632 because you were formed to serve the private interests of your creator B. Although your activities may result in new processes that benefit the public, this benefit is incidental to that derived by B and N.

You are like the organization in Better Business Bureau v. Commissioner. Although you have some educational purposes, the presence of the non-exempt purposes of operating for the benefit of B and N as well as for commercial purposes precludes exemption.

Similar to the organization in Harding Hospital, Inc. v. United States, 505 F.2d 1068 (1974), you have the burden of proving that you satisfy the requirements for tax exemption. You have failed to prove to us that you are not operating for the benefit of B.

You are comparable to the organization in Church by Mail because you and N are controlled by the same person. Moreover, N benefits substantially from your operations.

The IRS' January 22, 2013, letter informed petitioner that it had the right to file a protest if it believed that the determination in that letter was incorrect, which petitioner did shortly thereafter. In its protest, petitioner stated that although it disagreed with the IRS' determination that Mr. Muresan's inventions, in particular his pollution-free car engine, were not scientific research conducted in the public interest, it would modify its mission to reflect a dedication of 90% of its activities

[*19] to Mr. Muresan's human health ideas and 10% of its activities to instructing prospective inventors in how to apply for patents, eliminating the portions relating to Mr. Muresan's other inventions and proposed software development.  The protest did not attempt to address any of the IRS' other conclusions in its January 22, 2013, letter, and the protest appears to condition implementation of the modifications on the IRS' approving petitioner's application.

In a letter to petitioner dated August 8, 2013, the IRS notified petitioner that it again had concluded that petitioner did not qualify for exemption under section 501(c)(3), stating in pertinent part:

> You failed to provide any additional information from which it can be concluded that your activities exclusively further or advance a purpose described in Section 501(c)(3).
>
> Although you propose to remove some of your activities, you still do not qualify for exemption.  As explained in our analysis, you were formed to further the private interests of B and your net earnings inure to B's benefit.  Furthermore, your scientific research is still serving a non-exempt purpose because your intent is to obtain grant money to serve the private interests of B.  This precludes you from exemption under section 501(c)(3) of the Code.

Petitioner filed a second protest, stating that it would further modify its stated mission to reflect only Mr. Muresan's human health ideas in order for the IRS to approve its application.

**[\*20]** This protest was referred to the IRS Appeals Office in Los Angeles, California (Los Angeles Appeals Office). In a letter to petitioner dated December 5, 2013, the Los Angeles Appeals Office scheduled a telephone conference with Mr. Muresan for 10 a.m. PST on January 22, 2014. In written correspondence Mr. Muresan sent to the Los Angeles Appeals Office before the scheduled conference, he informed the Los Angeles Appeals Office that article three of petitioner's articles of incorporation (i.e., petitioner's purposes and mission) had been amended to state that petitioner "RESEARCHES PREVENTION AND CURE FOR DISEASES USING IMMUNE SYSTEM" and that he had received two letters from the U.S. Food and Drug Administration regarding his apparent plans to perform clinical trials. In the correspondence he also informed the Los Angeles Appeals Office that because he was driving commercial trucks he would not be able speak on the telephone while driving and inquired whether the conference could instead be conducted "by email exchange".

IV.    The IRS' Final Adverse Determination

The IRS issued petitioner a final adverse determination dated May 9, 2014, denying petitioner's application. The determination letter stated in pertinent part:

> This is a final adverse determination as to your application for exempt status under section 501(a) of the Internal Revenue Code as an

**[\*21]** organization described under section 501(c)(3).  Our adverse determination was made for the following reason(s):

Organizations exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code are required to operate exclusively for educational, charitable or other exempt purposes.  An organization is not operated for one or more exempt purposes unless it serves a public rather than private interest.  Treas. Reg. § 1.501(c)(3)-1(d)(1)(ii).

You operate for the private interest of your sole director and founder, David Muresan.  Additionally, you have failed to adequately describe your proposed operations despite multiple inquiries from the Internal Revenue Service.  You are therefore not eligible for recognition as a tax-exempt organization described in Section 501(c)(3) of the Internal Revenue Code.

### Discussion

Section 501(a) provides in pertinent part that organizations described in section 501(c)(3), including corporations, shall be exempt from Federal income tax unless exemption is denied under section 502 or 503.  As relevant here, to qualify as an exempt organization described in section 501(c)(3), a corporation must demonstrate that it is organized and operated exclusively for religious, charitable, scientific, educational, or other specified exempt purposes.[6]

---

[6]Sec. 501(c)(3) also provides that a corporation must demonstrate that no part of its net earnings inures to the benefit of any private shareholder or individual, that no substantial part of its activities consists of political or lobbying activities, and that no part of its activities constitutes intervention or participation in any political campaign on behalf of or in opposition to any candidate for public

(continued...)

**[\*22]** A corporation qualifying as an organization described in section 501(c)(3) not only is provided an exemption from Federal income tax, but also is generally allowed to solicit and accept charitable contributions that normally are deductible by the donor against his or her adjusted gross income. <u>See</u> sec. 170(c); <u>Bob Jones Univ. v. United States</u>, 461 U.S. 574, 578 (1983). As a result, such a corporation generally must submit an application to, and be approved by, the IRS for recognition as an exempt organization described in section 501(c)(3). Sec. 508(a); sec. 1.501(a)-1(a)(3), Income Tax Regs.

An organization is organized exclusively for one or more purposes specified in section 501(c)(3) only if its articles of incorporation (1) limit the purposes of the organization to one or more purposes specified in that section and (2) do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more of those purposes. Sec. 1.501(c)(3)-1(b)(1), Income Tax Regs.

The IRS' final adverse determination as to petitioner does not refer to whether petitioner is organized exclusively for one or more purposes specified in section 501(c)(3), and the matter is not addressed in respondent's answer to the

---

⁶(...continued)
office. Neither party asserts that any of these requirements are at issue, and thus we do not address them.

**[\*23]** petition (or respondent's briefs). Consequently, respondent is deemed to have conceded that petitioner was organized exclusively for one or more exempt purposes.

An organization is operated exclusively for one or more purposes specified in section 501(c)(3) only if it engages primarily in activities that accomplish one or more of those purposes. Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of one or more of those purposes, see id., or if the organization operates for the benefit of private interests such as designated individuals or the creator of the organization, see id. para. (d)(1)(ii). Section 501(c)(3) does "not provide exemption for an individual engaged in various activities, charitable or otherwise." Salvation Navy, Inc. v. Commissioner, T.C. Memo. 2002-275, slip op. at 9.

Respondent contends that petitioner has not demonstrated that it operates exclusively for section 501(c)(3) purposes and not for the private benefit of its creator, Mr. Muresan. As we understand the position of petitioner, it maintains that its planned "human health" endeavors will accomplish a charitable or scientific purpose.

[*24] The term "charitable" in section 501(c)(3) is used in its generally accepted legal sense; therefore, that term is not to be construed as limited by the separate enumeration in that section of other purposes that may fall within the broad outlines of "charity" as developed by judicial decisions. Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs. The term includes activities such as the advancement of education or science and the promotion of social welfare. Id. We also have held that the term includes the promotion of health and the provision of medical care by nonprofit entities as a general benefit to the community. Sound Health Ass'n v. Commissioner, 71 T.C. 158, 181-185 (1978) (citing Rev. Rul. 69-545, 1969-2 C.B. 117). However, "[t]o benefit the community, a charity must serve a sufficiently large and indefinite class"; in other words, the charitable purpose being pursued is ensuring the community's access to medical care, not just providing it at or below cost. Redlands Surgical Servs. v. Commissioner, 113 T.C. 47, 73 (1999), aff'd, 242 F.3d 904 (9th Cir. 2001); IHC Health Plans, Inc. v. Commissioner, T.C. Memo. 2001-246, slip op. at 32-33.

An organization may meet the requirements of section 501(c)(3) only if it serves the public rather than a private interest. Sec. 1.501(c)(3)-1(d)(5)(i), Income Tax Regs. Therefore, the term "scientific" in section 501(c)(3) includes the carrying on of scientific research in the public interest. Id. As pertinent here, an

[*25] organization is not operated for the carrying on of scientific research in the public interest if (1) the organization performs research only for persons that are directly or indirectly its creators and which are not described in section 501(c)(3) and (2) the organization directly or indirectly retains the ownership or control of more than an insubstantial portion of the patents, copyrights, processes, or formulae and does not make them available to the public. Sec. 1.501(c)(3)-1(d)(5)(iv), Income Tax Regs. Further, scientific research specifically excludes activities of a type ordinarily carried on as an incident to commercial or industrial operations. Id. subdiv. (ii).

Mr. Muresan created and incorporated petitioner, and every duty or role at petitioner is performed by him. He is the sole member of petitioner's board of directors, despite petitioner's bylaws requiring three to five members. He is petitioner's only officer and the only person conducting its activities; no other individual is involved with petitioner's operations.

During the administrative proceedings petitioner explained that it has yet to conduct any activities but that its activities will commence when it receives donations and is able to hire medical personnel to perform certain scientific or medical-related research. This research appears to be in an attempt to advance Mr. Muresan's human health ideas to cure diseases, whereby Mr. Muresan would have

[*26] a person with an illness stay at his home to be evaluated and monitored by a medical professional to assess whether wearing warm clothes aids in recovery. Petitioner has not been able to identify a medical professional that is able and willing to provide the necessary technical expertise needed to conduct such research.

Where an individual creates and controls an organization seeking exemption from Federal income tax under section 501(c)(3), there is an opportunity for abuse; the applicant thus must openly and candidly disclose all the facts bearing upon the organization and its operations and finances "so that the Court, should it uphold the claimed [tax] exemption, can be assured that it is not sanctioning an abuse of the revenue laws." Bubbling Well Church v. Commissioner, 74 T.C. 531, 535 (1980), aff'd, 670 F.2d 104 (9th Cir. 1981). Indeed, where such disclosure is not made, the logical inference is that facts, if disclosed, would show that the applicant fails to meet the requirements of section 501(c)(3). Id.

On multiple occasions during the administrative proceedings the IRS requested that petitioner fully explain its operations. Petitioner failed to furnish some of the requested information, and the responses that it provided were vague. Tellingly, petitioner's statements that any patents would be transferred either to Mr. Muresan or his for-profit entity once they became profitable, rather than

**[*27]** absolving petitioner of any significant nonexempt purpose, condemn it instead as clearly acting for private benefit, contrary to the requirement that the results of any scientific research be made available to the public. Petitioner also admitted that it is not affiliated with a hospital and does not have access to appropriate facilities and equipment for scientific or medical-related research. In addition, Mr. Muresan is not a medical doctor, and there is nothing in the administrative record to indicate that he has had any formal training or experience in scientific or medical-related research, business administration, or the operation of a charitable organization. It is apparent that petitioner is devoted to pursuing Mr. Muresan's own intellectual and commercial goals.

Moreover, the administrative record reveals another purpose for petitioner. During the administrative process petitioner advised respondent that recognizing petitioner as an exempt organization under section 501(c)(3) may be beneficial to Mr. Muresan to prevent the foreclosure of the mortgage on his personal residence, which was listed as an asset in petitioner's application despite the lack of any evidence in the record that he had transferred title to this property to petitioner. In this regard, the Court takes judicial notice of the fact that Mr. Muresan tried to use petitioner's existence as a reason to stave off that foreclosure. See Bank of N.Y. Mellon v. Muresan, 180 Wash. App. 1046, 2014 Wash. App. LEXIS 1085 (Ct.

**[*28]** App. 2014) (stating one of Mr. Muresan's "unavailing" arguments is that "he uses the house for the 'David Muresan Scientific Research Foundation'").

While we do not doubt that Mr. Muresan's desire to vanquish human health problems and his other ideas and goals are sincere, his attempts to establish petitioner as a tax-exempt organization fail to meet the requirements of section 501(c)(3).  On the basis of our examination of the administrative record, we find that petitioner will not be operated exclusively for one or more purposes specified in section 501(c)(3) and that petitioner's operations will more than incidently further Mr. Muresan's private interests.  We sustain the IRS' determination that petitioner is not exempt from Federal income tax under section 501(a) because it is not an organization described in section 501(c)(3).

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for

respondent.